IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     1:09CV498
                                 )
10.027 ACRES, MORE OR LESS,      )
ALSO KNOWN AS 7024 RIVERSIDE     )
ROAD, BROWER TOWNSHIP,           )
SEAGROVE, RANDOLPH COUNTY,       )
NORTH CAROLINA, WITH ALL         )
APPURTENANCES AND                )
IMPROVEMENTS THEREON,            )
                                 )
     v.                          )
                                 )
MARY C. HINSON,                  )
                                 )
          Claimant.              )
```

## AMENDED MEMORANDUM OPINION AND ORDER[1]

**OSTEEN, JR., District Judge.**

Presently before this court is Plaintiff's Motion for Summary Judgment (Doc. 69). Plaintiff has filed a memorandum in support of its motion (Doc. 70), and Claimant, proceeding pro

---

[1] This court, on its own motion, is amending the order and judgment to reflect entry of judgment in favor of the United States as to the requested relief. The appropriate language was omitted by oversight and this amendment is therefore made pursuant to Fed. R. Civ. P. 60(a).

se, has filed a response in opposition (Doc. 72).[2] Plaintiff's motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion.

**I.   BACKGROUND**

This civil in rem forfeiture action was filed by Plaintiff United States of America ("Plaintiff" or "Government") seeking forfeiture of certain real property located at 7024 Riverside Road, Seagrove, North Carolina ("Defendant property"). Plaintiff relies on three statutory provisions that provide for forfeiture of certain property: (1) 21 U.S.C. § 881(a) on the grounds that Defendant property was used to commit or facilitate the commission of a drug crime or that it constitutes proceeds traceable to the exchange of a controlled substance; (2) 18 U.S.C. § 981(a)(1)(C) on the grounds that Defendant property constitutes or was derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), that is, the exchange of a controlled substance in violation of state and federal law; and (3) 18 U.S.C. § 981(a)(1)(A) on the grounds that Defendant property was involved in one or more transactions in violation of 18 U.S.C.

---

[2] Claimant's pleading is captioned as a "Motion to Dismiss Summary Judgement [sic] for Civil Forfeiture." This court interprets that pleading as a response to the Government's motion for summary judgment.

§§ 1956 and/or 1957, or is traceable to such property. (See Verified Complaint of Forfeiture ("Verified Compl.") (Doc. 1).)

Mary Cheek Hinson ("Claimant") is the only remaining claimant to Defendant property.[3] Claimant has lived with her husband at 332 Washington Park Road, Mount Gilead, North Carolina, since approximately 1996. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem."), Ex. C, Deposition of Mary Magdalene Cheek Hinson ("Hinson Dep.") (Doc. 70-3) at 3.)[4] On May 20, 2004, Claimant's cousin transferred 6.00 acres of land on Riverside Road into Claimant's name by gift deed. On August 2, 2004, Claimant's cousin transferred a total of 10.027 acres, including the original tract, to Claimant by gift deed. (Verified Compl., Ex. A-1, Warranty Deed (Doc. 1-3); see also Hinson Dep. (Doc. 70-3) at 4 ("My cousin gifted me the property . . . .").) That 10.027 acre tract is Defendant property. The property was unimproved land at the time it was transferred. Defendant property now includes a 3,174 square foot house, a pool, a garage, and other improvements. In 2012, the property

---

[3] The claims of Juan Jose Organes-Espino and Tressa Brower Organes were previously struck. (Docs. 25 and 40, respectively.)

[4] All citations in this Amended Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

had a tax value of $300,970.  (Pl.'s Mem., Ex. B, Randolph County Tax Dep't Listing Information (Doc. 70-2) at 6.)

During her deposition, Claimant testified that Defendant property was gifted to her because her "son-in-law, Juan Organes, he wanted to construct a house."  (Hinson Dep. (Doc. 70-3) at 8-9.)  Organes-Espino was not a legal resident of the United States, and Claimant wanted to ensure that her daughter and her daughter's children would have somewhere to live if Organes-Espino were deported.  (Id. at 10-11.)

On July 8, 2009, Organes-Espino was arrested on a complaint and warrant for conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 846. (See docket entry entered on July 8, 2009, in criminal case 1:09CR263.)  The grand jury indicted him on that charge on July 27, 2009.  (See (Doc. 10) in criminal case 1:09CR263.)  A jury trial in March 2010 ended in a mistrial.  (See oral order granting oral motion for mistrial entered on March 17, 2010, in criminal case 1:09CR263.)  A superseding indictment that added a count charging Organes-Espino with being an illegal alien in possession of a firearm was issued on June 29, 2010.  (See (Doc. 45) in criminal case 1:09CR263.)  On October 4, 2010, a new jury found Organes-Espino guilty on both counts.  (See (Doc. 79) in criminal case 1:09CR263.)

-4-

Case 1:09-cv-00498-WO-LPA   Document 75   Filed 05/17/13   Page 4 of 15

The following facts are derived from testimony at Organes-Espino's criminal trials in March and September 2010. Mark Bittle testified that he purchased approximately thirty kilograms of cocaine hydrochloride from Organes-Espino each month from late 2002 or early 2003 to 2007. (Pl.'s Mem., Ex. E, Trial Tr. Mar. 9, 2010 (Doc. 70-5) at 11.) In their first deal, Bittle paid cash for three kilograms of cocaine at a price of $19,500 per kilogram. (Id. at 4.) After they had built a relationship through several deals, Organes-Espino started fronting cocaine to Bittle, allowing him to pay for it later. (Pl.'s Mem., Ex. F, Trial Tr. Sept. 28, 2010 (Doc. 70-6) at 4-5.)

At some point, Organes-Espino approached Bittle about having a house built, and Bittle told him that he could "get the job done." (Trial Tr. Mar. 9, 2010 (Doc. 70-5) at 13.) Bittle had hired a contractor to build his own home and had paid in cash so that his drug money would not show up. (Trial Tr. Sept. 28, 2010 (Doc. 70-6) at 6.) Bittle attended an initial meeting between that contractor, Organes-Espino, and Organes-Espino's wife regarding construction of a home. (Id. at 7-8.) The contractor wanted an initial payment of $42,000 to start on the house. (Id. at 8.) At the time, Organes-Espino had fronted Bittle five kilograms of cocaine, and they agreed that Bittle

-5-

would make the $42,000 payment to the contractor in partial satisfaction of his drug debt.  (Id.)  The contractor confirmed that Bittle made the initial payment.  (Id. at 12.)

The contractor testified that it took seven or eight months to finish construction.  (Id. at 11.)  Whenever payments had to be made or materials had to be purchased, either Organes-Espino or his wife would always pay in cash.  (Id.)  The contractor also received a 1999 Ford Expedition from Organes-Espino as partial payment for his work.  (Id. at 13.)

Richard Brower started purchasing cocaine from Organes-Espino upon Brower's release from prison in 2003.  (Trial Tr. Mar. 9, 2010 (Doc. 70-5) at 15-16.)  After Brower built his clientele, he obtained twenty-five to forty kilograms of cocaine from Organes-Espino each month.  (Id. at 16.)  This process continued until Brower went to prison again in 2007.  Brower went to Organes-Espino's house "a couple times to talk to him, and [Brower] went a few more times to pick up some cocaine from him."  (Id. at 17.)  Brower would pick up cocaine in the driveway instead of going in "the big brick house."  (Id. at 17-18.)

On January 15, 2008, DEA Special Agent William Kinghorn interviewed Avelino Osorio-Cortez, who had provided landscaping services at Defendant property.  Osorio-Cortez stated that

-6-

Organes-Espino had paid him a total of approximately $20,000 to $25,000 for landscaping, including labor and supplies. (Pl.'s Mem., Ex. A, Declaration of William C. Kinghorn (Doc. 70-1) ¶ 21.) Organes-Espino paid part of the bill with a personal check and the rest with cash. (Id. ¶ 22.) Osorio-Cortez also stated that Organes-Espino had told him that he owned the house on Riverside Road. (Id. ¶ 23.) Defendant property also includes a swimming pool in the backyard and an unattached garage. (Id.)

**II.  LEGAL STANDARD**

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Id. at 255. A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48. Material facts are those facts necessary to establish the elements of a party's cause of action. Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**III. ANALYSIS**

Because this court previously struck Claimant's innocent owner defense as a sanction for failing to comply with discovery orders (see Doc. 55), the only issue remaining for consideration is whether Plaintiff has satisfied its burden to "establish, by a preponderance of the evidence, that the property is subject to forfeiture" on at least one of the bases alleged in the

Complaint. See 18 U.S.C. § 983(c).[5]  Under the preponderance of the evidence standard, the Government must show that the relevant facts are more likely true than not. United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004).  In determining whether the Government has satisfied its burden, this court considers the evidence in its totality instead of "[p]arsing evidence in isolation for a fatal flaw." See United States v. Thomas, 913 F.2d 1111, 1117-18 (4th Cir. 1990).

The Government contends that Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 981(a)(1)(A).  Claimant raises several arguments in her response. (See Claimant's Resp. to Pl.'s Mot. for Summ. J. (Doc. 72).)  First, she contends that Defendant property should not be forfeited because Organes-Espino does not own the property. (Id. ¶ 2.)  Second, Claimant argues that the Government "did not prove during the two criminal procedures that any funds used for construction of any

---

[5] Even if this court had not struck Claimant's innocent owner defense, the evidence in the record would not support such a defense.  Although Claimant's name appears on the deed, the evidence shows that she held title only as a "nominee who exercise[d] no dominion or control over the property." See 18 U.S.C. § 983(d)(6)(B)(iii).  She accepted the property so that her son-in-law, who was not a legal resident, could build a house.  Furthermore, she admitted during her deposition that neither she nor her husband had made any financial contribution to either the construction or the maintenance of Defendant property. (See Hinson Dep. (Doc. 70-3) at 5-7, 13-14.)

-9-

of the structures on this property were gained through illegal activities." (Id. ¶ 3.) Third, she contends that Defendant property did not constitute or derive from proceeds traceable to any offense constituting "'specified unlawful activity.'" (Id. ¶ 4.) For the reasons that follow, this court finds that the Government has demonstrated by a preponderance of the evidence that Defendant property constitutes proceeds traceable to drug transactions and/or other specified unlawful activity. Accordingly, this court will grant Plaintiff's motion for summary judgment on that basis.[6]

Proceeds traceable to illegal drug transactions are subject to forfeiture. In pertinent part, 21 U.S.C. § 881(a)(6) authorizes the forfeiture of "[a]ll moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange." Any property which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" is also subject to forfeiture.

---

[6] Because this court finds sufficient evidence to support forfeiture of Defendant property pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) as the proceeds of illegal drug activity and/or other specified unlawful activity, it does not address whether Plaintiff is entitled to summary judgment on the grounds that Defendant property was used to facilitate drug transactions or was involved in a money laundering offense.

18 U.S.C. § 981(a)(1)(C). The definition of "specified unlawful activity" encompasses many of the racketeering activities listed in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1956(c)(7). One example of a racketeering activity is any act that involves dealing in a controlled substance "which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Accordingly, property that constitutes proceeds of a drug transaction may be subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Here, Plaintiff has demonstrated by a preponderance of the evidence that Defendant property represents proceeds of illegal drug transactions and/or other specified unlawful activity through both direct and circumstantial evidence. Based in part on the testimony of Bittle and Brower as to their history of drug transactions with Organes-Espino, Organes-Espino was found guilty of conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). That evidence shows that Organes-Espino distributed substantial amounts of cocaine from at least 2003 until Bittle and Brower were arrested in 2007. Brower testified that he visited Defendant property several times to pick up cocaine from Organes-Espino in the driveway to his house. Furthermore, Bittle testified that he paid the Organes-Espino's contractor a $42,000 down payment in

-11-

partial satisfaction of a drug debt he owed Organes-Espino, providing direct evidence that drug proceeds represented at least a portion of the payments made toward constructing the house located on Defendant property.

Turning to the circumstantial evidence, the Government has presented evidence that no party who has claimed an interest in Defendant property had sufficient legitimate income to account for the improvements made to that property. "[W]here a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds." United States v. Edwards, 885 F.2d 377, 390 (7th Cir. 1989), quoted with approval by Thomas, 913 F.2d at 1114. Although the Government must now meet the greater burden of demonstrating its case by a preponderance of the evidence, evidence of a lack of verifiable, legitimate income is still relevant to the analysis. See United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) ("The change in the standard, from probable cause to a preponderance of the evidence, does not change the fact that the evidence that the

government presented [of insufficient legitimate income] in this case remains sufficient.").

Here, there is no evidence that either Claimant[7] or the Organes-Espino family had sufficient legitimate income to account for the improvements to Defendant property. Defendant property was undeveloped when it was transferred to Claimant by gift deed. It now includes a 3,174 square foot house, a pool, a garage, and other improvements. In 2012, the property had a tax value of $300,970.

The only proffered sources of legitimate income are Organes-Espino Builders, a construction business operated by Organes-Espino and his wife, and family contributions. (See Forfeiture Claim (Doc. 8) at 2 ("The property at 7024 Riverside Road Brower Township, Seagrove, North Carolina with all appurtenances and improvements thereon were not acquired by money laundering, or any other illegal activity, but from funds paid to Organes Builders from various construction projects, loans from family members, and gifts from family members.");

---

[7] Plaintiff submitted evidence regarding Claimant's tax records during the relevant years. (See Pl.'s Mem., Ex. D, Claimant's Resp. to Interrogatories (Doc. 70-4) at 7-13.) This evidence is irrelevant based on Claimant's admission that she did not contribute to Defendant property. However, if considered, those records show that Claimant's income would have been insufficient to account for the improvements to Defendant property.

-13-

Hinson Dep. (Doc. 70-3) at 4 ("[T]he house was constructed on there with money from Organes Builders."); Tressa Brower Organes Dep. (Doc. 70-8) at 5 ("I guess most of the money came from the construction.").) No family contributions have been substantiated and the only available tax records from the Organes-Espino family and their business show that their reported income during this period was insufficient to explain the improvements to Defendant property.

Neither Organes-Espino nor Organes Builders filed tax returns from 2002 to 2007. (See Pl.'s Mem., Ex. K, Certification of Lack of Record (Doc. 70-11); Ex. M, Certification of Lack of Record (Doc. 70-17).) Tressa Organes did file returns in 2002, 2004, 2005, 2006, and 2007; however, those returns show only modest income from wages and Organes Builders. (See Pl.'s Mem., Ex. L, Parts 1-5, Tax Return (Docs. 70-12 to 70-16).) The total taxable income reported by Organes-Espino, Tressa, and Organes Builders during this six-year period was $66,023. During that same period, the improvements were made to Defendant property while Organes-Espino and Tressa were also supporting at least three children. (See Tressa Brower Organes Dep. (Doc. 70-8) at 3-4 (stating that three of her four children lived with her at Defendant property at the time she was deposed).) This court finds that the failure to

-14-

substantiate legitimate income combined with the substantial evidence of Organes-Espino's drug trafficking activities strongly supports a finding that Defendant property is either proceeds of illegal drug transactions or traceable to such proceeds.

Based on the substantial evidence of Organes-Espino's drug trafficking activity and the modest amount of substantiated legitimate income, this court finds that Plaintiff has satisfied its burden of demonstrating that Defendant property is either proceeds of or traceable to proceeds of drug transactions and/or other specified unlawful activity.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 69) is **GRANTED** and that the claim of Mary C. Hinson is **DISMISSED. IT IS FURTHER ORDERED** that the Defendant property is hereby forfeited to the United States of America for disposition according to law. A Judgment consistent with this opinion will be entered contemporaneously with this order.

This the 17th day of May, 2013.

/s/ William L. Osteen, Jr.
United States District Judge